UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWN RILEY,

      Plaintiff,

v.               Case No. 20-cv-1252-pp

JOLINDA WATERMAN, *et al.*,

      Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 7) AND SCREENING COMPLAINT**

Shawn Riley, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately different to his serious medical needs. Dkt. No. 1. This decision resolves his motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and his motion to appoint counsel, dkt. no. 7, and screens his complaint, dkt. no. 1.

**I. Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to let a prisoner plaintiff proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1).

1

He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On August 17, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $304.25. Dkt. No. 5. The court received that fee on September 3, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint (Dkt. No. 1)**

    A.    <u>Federal Screening Standard</u>

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

The court must dismiss a complaint if a plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

A claim is legally frivolous when "it lacks an arguable basis either in law or in fact." <u>Denton v. Hernandez</u>, 504 U.S. 25, 31 (1992); <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). The court may dismiss a claim as frivolous where it

"is based on an indisputably meritless legal theory" or where the "factual contentions are clearly baseless." Neitzke, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a claim under the federal notice pleading system, a plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead every fact supporting his claims; he only must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). That said, a complaint that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). Rather, a complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

To state a claim under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or laws of the

3

United States and that whoever deprived him of that right was acting under color of state law. Buchanan-Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court gives a *pro se* plaintiff's allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.   The Complaint

The complaint consists of eighty-seven single-spaced, hand-written pages. Dkt. No. 1. It names eleven defendants and contains more than 145 paragraphs of factual and legal assertions. Id. Because of the long, rambling, wordy nature of the complaint, if the plaintiff has asserted any factual allegations that might state a claim for relief, they are buried in pages and pages of conclusions, allegations and excessive and unnecessary detail.

As noted above, Fed. R. Civ. P. 8(a)(2) states that a complaint "must contain . . . a *short and plain* statement of the claim showing that the pleader is entitled to relief." (Emphasis added.) There is a reason that the rule specifies a "*short and plain*" statement. "Rule 8(a) requires parties to make their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin from a bucket of mud." U.S. *ex rel.* Garst v. Lockheed-Martin Corp., 328 F.3d 374, 378 (7th Cir. 2003). The plaintiff cannot leave the court "to guess what claims [he] intends to assert against which defendants." Dunigan v. St. Clair Cty. Jail Med. Staff, No. 15-CV-487, 2015 WL 2455505, *2 (S.D. Ill. May

4

22, 2015). "[L]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter." Kadamovas v. Stevens, 706 F.3d 843, 844 (7th Cir. 2013) (quoting Garst, 328 F.3d at 378). "District judges are busy, and therefore have a right to dismiss a complaint that is so long that it imposes an undue burden on the judge, to the prejudice of other litigants seeking the judge's attention." Id.

Not only is the complaint long and wordy, but it contains allegations of different kinds of injuries allegedly committed by different groups of defendants. The plaintiff alleges at least two distinct claims: (1) that some people denied him proper treatment for a foot condition, refused to process his complaints about that medical condition or failed to correct the actions of those responsible for denying him care; and (2) that other people sexually assaulted him, attempted to cover-up that sexual assault or interfered with the plaintiff's attempts to report the sexual assault. The plaintiff admits in his separately filed declaration that his case "contains several different legal claims, with each claim involving a different set of defendants." Dkt. No. 9 at ¶3.

Federal Rule of Civil Procedure 18(a) instructs a plaintiff to "put in one complaint every claim of any kind against a single defendant," but a plaintiff may "present claim #1 against Defendant A, and claim #2 against Defendant B, only if both claims arise 'out of the same transaction, occurrence, or series of transactions or occurrences.' Rule 20(a)(2)(A)." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). Fed. R. Civ. P. 20(a)(2)(B) states that a plaintiff may join multiple people in the same case as defendants

5

only if there are questions of law or fact common to "all" defendants. In other words, "[a] litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot." Id. (citing George v. Smith, 507 F.3d 605 (7th Cir. 2007)).

The plaintiff has done what the Seventh Circuit, and Rules 18 and 20, state that plaintiffs cannot do. He has sued nearly a dozen defendants relating to at least two distinct incidents with separate allegations about each. The only thing all these individuals have in common is that the plaintiff encountered them as a result of his incarceration. That is not enough for the court to conclude that his claims are related or that there are questions of law or fact common to all the defendants.

The court will require the plaintiff to file an amended complaint that complies with Rules 8, 18 and 20. The amended complaint must provide a "simple, concise, and direct" statement of his claims. Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998). The plaintiff should "avoid a rambling, incoherent complaint." Ford v. Flannery, No. 2-07-CV-267, 2008 WL 821686, *2 (N.D. Ind. March 26, 2008). The plaintiff does not need to include every detail giving rise to his claim(s); he needs to provide only enough facts that the court can reasonably infer that the defendants did what the plaintiff alleges they did. The plaintiff must be careful to choose from among his claims only those claims that are related to one another and that arise out of the same underlying circumstances or events.

When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court advises the plaintiff that "[p]ublic officials do not have a free-floating obligation to put things to rights." Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009). This is because "public employees are responsible for their own misdeeds but not for anyone else's." Id. The fact that a prison staff member denies a prisoner's inmate grievance, or agrees with another employee's recommendation to dismiss a grievance, does not mean that that staff member violated a prisoner's constitutional rights, nor does it make the staff member liable for the alleged misconduct of another person. See id. The plaintiff should name as defendants only those individuals who were personally involved in or responsible for the alleged constitutional violation.

The court is enclosing with this order a guide for prisoners representing themselves that explains how to file a complaint that the court can effectively screen. The court also will include a blank prisoner complaint form. The court will require the plaintiff to use that form to file his amended complaint. See Civil Local Rule 9 (E.D. Wis.). The plaintiff must write the word "Amended" at

7

the top of the first page of the form, in front of the word "Complaint." He must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If, after crafting his allegations in clear, concise, "who, what, when, where, why" language, the plaintiff believes he needs more space than is provided in the form complaint, he may attach **a maximum of five additional sheets of paper, double-spaced so that the court can read them**. The amended complaint takes the place of the first complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, rather than repeating in the amended complaint any of the facts from the original complaint that are necessary to his claims.

### III. Motion for the Appointment of Counsel (Dkt. No. 7)

The plaintiff also requests that the court appoint counsel to represent him. Dkt. No. 7. In a civil case, the court has the discretion to recruit counsel for individuals unable to afford a lawyer. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to

volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019) (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second element, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490–491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other

9

characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff states that he wrote letters to two attorneys and one law firm asking them to represent him. Dkt. No. 7 at ¶4. One attorney declined to take the case, and the letter the plaintiff sent to the other attorney was returned as "non-deliverable as addressed." Id. The plaintiff states he has not heard back from the law firm. Id. The court concludes that the plaintiff has satisfied the first Pruitt requirement, by trying to find counsel on his own.

The plaintiff has not, however, satisfied the second requirement at this stage. The plaintiff states that he has limited knowledge of the law, that he is unable to afford counsel and that his case involves complex medical issues. Dkt. No. 7 at ¶¶1, 3, 5. But those concerns are not unique to this plaintiff or this case. Most incarcerated inmate plaintiffs have only limited knowledge of the law, if any. Most cannot afford lawyers.

The plaintiff also states that his case will require expert medical testimony at trial and that a trial will involve conflicting testimony which counsel would be better able to present. Id. at ¶6-7. That may be true, but it is far too early in the case to tell. If the plaintiff files an amended complaint that complies with this order and the court determines that it states a claim, the next step will be for the court to order the complaint served on the defendants, and for them to answer. After that, the plaintiff will be able to ask the

10

defendants for information about the events he describes—"discovery." None of this requires knowledge of the law or research. After that, there will be motions. Only after the parties have gone through all these steps will the court even begin to consider a trial, months from now. The plaintiff's concerns about needing a lawyer for trial are premature.

The plaintiff also explains that he has limited access to the law library because of the COVID-19 pandemic. Dkt. No. 7 at ¶2. He states that he has tested positive for COVID-19 and requires counsel to handle his litigation to "safeguard[] this Honorable Court from direct contact with the plaintiff." Id. at ¶8. Many prisoners do have limited law library access during this time. That is not a reason to recruit counsel, though it may provide good cause for allowing the plaintiff additional time to comply with the court's filing deadlines. That the plaintiff has tested positive for COVID-19 also does not entitle him to an attorney. The court appreciates the plaintiff's concerns for the court's safety. But the plaintiff will not have direct contact with the court. Green Bay Correctional Institution is part of the inmate e-filing system. The plaintiff gives any document he wants to file to prison staff, who scan it in and file it electronically. The court does not schedule in-person hearings with prisoner plaintiffs until it is time for trial, and as the court has noted, any trial is months away. If the court needs to speak with the plaintiff, it can work with prison staff to set up a telephone hearing or a video hearing.

Finally, the plaintiff may not have much knowledge of the law, but he certainly is able to express himself. The plaintiff can write. The court fully

11

understands his motion to appoint counsel. If the plaintiff would cut down on unnecessary detail and argument, he likely would be able to present a clear, understandable complaint. The plaintiff appears to have some education—his sentence structure is clear and comprehensive, his handwriting is neat and his communication style—while *very* wordy—is direct. The court believes that at this early stage, the plaintiff can represent himself.

As the case progresses, if the legal and factual issues become too complex, or the plaintiff's circumstances change, or he finds himself unable to obtain the information he believes he needs to prove his claims, he may renew his request for appointment of counsel. At this stage, the court will deny without prejudice his motion for recruitment of counsel (that means the plaintiff can re-file the motion in the future if he feels it is necessary).

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion for appointment of counsel. Dkt. No. 7.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so by the end of the day on **December 11, 2020**. If the plaintiff files an amended complaint in time for the court to *receive*

12

*it* by the end of the day on December 11, 2020, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by day's end on Friday, December 11, 2020, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g). If the plaintiff concludes, after reading this order, that he does not want to proceed with the case, he may notify the court in writing that he wants to voluntarily dismiss the case and avoid accruing a strike.

The court **ORDERS** that the agency that has custody of the plaintiff shall collect from his institution trust account the **$45.65** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution shall forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 30th day of October, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**