UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SHAWN RILEY,

                    Plaintiff,

        v.                                                    Case No. 20-cv-1252-pp

JOLINDA WATERMAN and
SANDRA MCARDLE,

                    Defendants.

## ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A

On October 30, 2020, the court screened plaintiff Shawn Riley's *pro se* complaint under 42 U.S.C. §1983, dismissed it because it violated Federal Rules of Civil Procedure 8, 18 and 20 and ordered the plaintiff to file an amended complaint by December 11, 2020. Dkt. No. 10. On December 9, 2020, the court received the plaintiff's amended complaint, which is now before the court for screening. Dkt. No. 12.

## I.      Screening the Complaint

### A.      Federal Screening Standard

As explained in the previous order, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

1

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720

(citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The original complaint was long and wordy and named numerous

unrelated defendants against whom the plaintiff sought to proceed on

unrelated claims. The court dismissed the complaint for those reasons. Dkt.

No. 10 at 4–6. The amended complaint names only Jolinda Waterman and

Registered Nurse Sandra McArdle. Dkt. No. 12 at 1–2. The plaintiff alleges that

both worked at the Wisconsin Secure Program Facility (WSPF) at the time of

the events described in the amended complaint. Id. at 2–3.

The plaintiff alleges that all his life he has suffered from a leg deformity

referred to as being "duck-footed"—"having an eversion of the foot, causing

malalignment of [his] leg joints (ankles & knees); thus, pain); & for debilitating

muscle cramps." Id. at 3. He explains that he wore corrective leg braces as a

child, then progressed to medical footwear—athletic air sole shoes or sandals.

Id.

The plaintiff says that on May 15, 2016, he requested services from the

Health Services Unit at WSPF for pain and complications associated with his

condition. Id. The Health Services Unit was not able to diagnose or treat him,

so Nurse McArdle sent the plaintiff to an offsite specialist. Id.

The plaintiff alleges that on March 24, 2017, his "eversion of the feet"

was "verified" and specialist P. Michal Jacobs (not a defendant) told the plaintiff

that he had "'Tight Heel Cord, Plantar Fasciitis & Collapsed Medial Arches' in

both feet." Id. at 3. Jacobs ordered the plaintiff to wear athletic, high-top shoes with soft inserts pending a follow-up visit. Id. The plaintiff alleges that he later learned that defendant Waterman had "verbaliz[ed] her intention" to prevent him from accessing medical shoes. Id. at 3-4.

The plaintiff alleges that without care, his condition worsened. Id. at 4. The plaintiff explains that he had his follow-up visit with Jacobs and "was sent to a specialist" four additional times (six visits total). Id. He alleges that all specialists gave the diagnosis and same orders for care, but that he never received the medical shoes because McArdle and Waterman "eras[ed] orders" from the plaintiff's medical file after his visits with the specialists and failed to refer the specialists' orders to the Special Needs Committee for review. Id. The plaintiff says that he "regularly" told the Health Services Unit "about his worsening conditions," which he says were preventing his "once routine daily activities" of exercising, sitting, standing, walking and praying according to his Muslim faith. Id.

On July 11, 2018, the plaintiff went to the University of Wisconsin for a second opinion; podiatrist Smith (not a defendant) diagnosed the plaintiff with "Achilles Tendonitis, Bilateral Posterior Tendonitis, [and] Plantar Fasciitis Bilateral." Id. The plaintiff says that Dr. Smith noted, "This is about proper support & until [the plaintiff] get's the right shoes & inserts, this pain will not go away & will continue to get worse." Id. Dr. Smith ordered the plaintiff to "wear personal shoes 'at all times,' including offsite visits," and receive medical

4

footwear from a vendor. Id. The plaintiff alleges that McArdle "crossed these orders out" of his medical file, "leaving [him] to suffer without effective care." Id.

On July 1, 2019, the plaintiff was transferred from WSPF to Green Bay Correctional Institution. Id. Although the plaintiff alleges that he continued to suffer from pain and complications at Green Bay, he says that on October 19, 2020, the Health Services Unit at Green Bay approved his medical restriction and allowed him to purchase Athletic Air Sole shoes from an outside vendor. Id. The plaintiff alleges that these shoes allowed him to begin "effectively treating his chronic/severe pains." Id. at 4–5. The plaintiff claims Waterman and McArdle knew of his serious medical condition and of his suffering, but that they refused to provide him appropriate care as the specialists had directed, subjecting him to needless pain "without any legitimate penological interest." Id. at 5. He seeks declaratory judgment, compensatory damages and punitive damages against both defendants in their individual capacities. Id. at 6–7.

C.    Analysis

The court reviews the plaintiff's claim regarding the denial of proper medical care under the Eighth Amendment, which "protects prisoners from prison conditions that cause the wanton and unnecessary infliction of pain, including . . . grossly inadequate medical care." Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)) (internal quotations omitted). Not "every claim by a prisoner that he has not received adequate medical treatment states

5

a violation of the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the inmate must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." <u>Petties v. Carter</u>, 836 F.3d 722, 728 (7th Cir. 2016) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)); <u>see</u> <u>Estelle</u>, 429 U.S. at 103. "[D]eliberate indifference describes a state of mind more blameworthy than negligence." <u>Farmer</u>, 511 U.S. at 835. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." <u>Perez v. Fenoglio</u>, 792 F.3d 768, 776 (7th Cir. 2015) (citing <u>Farmer</u>, 511 U.S. at 837).

The plaintiff's allegations that the defendants delayed treating his "non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." <u>Arnett v. Webster</u>, 658 F.3d 742, 753 (7th Cir. 2011) (citing <u>McGowan v. Hulick</u>, 612 F.3d 636, 640 (7th Cir. 2010)). What period of delay is tolerable "'depends on the seriousness of the condition and the ease of providing treatment.'" <u>Id.</u> (quoting <u>McGowan</u>, 612 F.3d at 640). In certain circumstances, "even brief, unexplained delays in treatment may constitute deliberate indifference." <u>Lewis v. McLean</u>, 864 F.3d 556, 563 (7th Cir. 2017) (quoting <u>Perez</u>, 792 F.3d at 777–78).

The plaintiff alleges that he suffers from duck-footedness, which on its own may not constitute an objectively serious condition. But his allegations

that he suffered chronic and severe pain over four years satisfy the objective component of an Eighth Amendment claim. See Arnett, 658 F.3d at 753 (citing Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010)) (concluding that inmate's "steady complaints of escalating pain" over ten months satisfied objective component).

As to the subjective component, the plaintiff alleges that McArdle and Waterman were aware of his condition, the recommended treatment and the pain he suffered. He alleges the defendants not only refused to provide him the treatment his specialists prescribed but removed information about his treatment from his medical file to prevent others from providing him appropriate treatment. The plaintiff has alleged that McArdle and Waterman acted "in a manner contrary to the recommendation of specialists," which is sufficient at the screening stage to state a claim that they were deliberately indifferent to the plaintiff's condition and the pain it caused. Perez, 792 F.3d at 777 (citing Arnett, 658 F.3d at 753). The court will allow the plaintiff to proceed on Eighth Amendment claims of deliberate indifference against McArdle and Waterman for monetary damages.

The court will not allow the plaintiff to proceed on his request for declaratory relief. The defendants work at WSPF, where these events occurred. But the plaintiff since been transferred to another prison where he received the treatment the defendants allegedly denied him, and he does not allege that he expects to return to WSPF. Because the plaintiff is no longer at the facility where the defendants work, "a declaratory judgment would not affect [the

defendants'] behavior towards [the plaintiff]." <u>Pearson v. Welborn</u>, 471 F.3d 732, 743 (7th Cir. 2006) (citing <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 103–04 (1983), and <u>Davis v. District of Columbia</u>, 158 F.3d 1342, 1348 (D.C. Cir. 1998)). The plaintiff's request for declaratory relief is moot. <u>See</u> <u>Bigbee v. Nalley</u>, 482 F. Supp. 2d 1092, 1099 (W.D. Wis. 2007) (citing <u>Robinson v. City of Chi.</u>, 868 F.2d 959, 966 n.5 (7th Cir. 1989), and <u>Higgason v. Farley</u>, 83 F.3d 807, 811 (7th Cir. 1996)).

## II.  Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Jolinda Waterman and Sandra McArdle. Under the informal service agreement, the court **ORDERS** those defendants to file a responsive pleading to the complaint within sixty days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court also advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

Dated in Milwaukee, Wisconsin, this 25th day of January, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**